The Honorable Tiffany M. Cartwright

Jeremy W. Culumber, WSBA #35423
Danielle Rogowski, WSBA #51548
Keating, Bucklin & McCormack, Inc., P.S.
1201 Third Avenue, Suite 1580
Seattle, Washington 98101
(206) 623-8861
Attorneys for Defendants

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ESTATE OF BOHDAN VETROV, deceased, and LIUDMYLA VETROV, individually, and as legal guardian of minors V.V. and D.V., and as Personal Representative for the Estate,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LAKEWOOD, CHIEF PATRICK D. SMITH, COLE CRANER, SEAN URCFITZ, JESSIE PHILLIPS, and CHARLES HAYES in their official and individual capacities,<br><br>Defendants. | No. 3:26-CV-5059 TMC<br><br>DEFENDANTS' REPLY TO ITS RULE 12(C) MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS<br><br>NOTED: SEPTEMBER 2, 2026<br>WITHOUT ORAL ARGUMENT |

## I. REPLY ARGUMENT

Plaintiffs' response concedes several of their claims are either not cognizable under the law, or simply have not been properly pled to begin with. For the claims on which they do provide responsive argument, they misconstrue not only the well-established law applicable to their claims, but the facts and allegations actually pled in their own *Second Amended Complaint*. The specific claims addressed in Defendants' *Motion* (*ECF 25*) should be dismissed.



KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

**A. <u>SERGEANT EAKES</u>**

Despite identifying Sgt. Eakes as a "defendant" in their *Second Amended Complaint* (*ECF 20 at ¶6.4*), and explicitly alleging his actions/omissions "contributed directly to the unlawful nature of the pursuit and the resulting fatal collision," Plaintiffs now concede that Sergeant Eakes "is not named in the caption or party allegations and is not a defendant." *ECF. 26 at 5:10-11*. As such, no further briefing is required.

**B. <u>NEGLIGENT TRAINING/SUPERVISION AGAINST THE CITY</u>**

As indicated in the City's motion, the law could not be more clear: when a plaintiff sues a government employee for negligent acts committed in the course and scope of employment, they cannot also sue the government employer for negligent training/supervision of that employee. *See discussion at ECF 25 at 5:16-6:25*. Our courts have expressed two distinct reasons for this prohibition.

First, if an employee is negligent while acting in the course and scope of his employment, the employer is ***automatically*** liable under *respondeat superior*. Conversely, if an employee was ***not*** negligent, then there is no tort, and the employer "cannot be liable, even if it was negligent in training and supervising them." *<u>LaPlant v. Snohomish County</u>*, 162 Wn.App. 476, 480-81 (2002). As a result, a claim against the employer for negligent training/supervision of that employee "is not only improper…it is also superfluous" in either context. *<u>Id</u>*; *see also RESTATEMENT (SECOND) OF TORTS § 317* (claims for negligent hiring/training/supervision are "applicable ***only*** when the [employee] is acting outside the scope of his employment.")(emphasis in original).

Second, our courts have been clear that when the employer is a government agency, the duty to train/supervise its employees is a quintessential "public duty," the breach of which is not reachable in tort under the Public Duty Doctrine. *See e.g.*, *Dowell v. City of Lynnwood,* No. C06–1240–JCC, 2007 WL 4365793, at *6 (W.D. Wash. Dec.11, 2007) (public duty doctrine bars claim against the city for negligent training/supervision); *Shope v. City of Lynnwood,* No. C10–0256RSL, 2011 WL 1154447, at *6 (W.D. Wash. Mar. 28, 2011)



KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

("The duty of the City to hire, train, retain, and supervise its officers is owed to the public at large, not to plaintiff individually."); *Fuller v. Lee*, C13-0563JLR, 2014 WL 6982519, at *13 (W.D. Wash. Dec. 9, 2014) (public duty doctrine bars claim for breach of general responsibility to supervise police officers).

In their response briefing, Plaintiffs argue their training/supervision claim against the City should be allowed to proceed because the law "distinguishes an employer's vicarious liability for an employee's tort from ***direct liability based on the employer's own breach***." *ECF 26 at 10:3-4*; *see also Id. at 10:10-11* (alleging an "independent duty owed and breached by the entity itself"). This argument reveals Plaintiffs' fundamental misunderstanding of the well-established law and the cases that specifically articulate the parameters of each theory of liability.

**1. <u>Plaintiffs Misinterpret/Misapply the Cases They Discuss</u>**

Regarding their claim for negligent training/supervision against the City, Plaintiffs rely primarily on <u>*Niece v. Elmview Grp. Home*</u>, 131 Wn.2d 39 (1997) and <u>*Anderson v. Soap Lake Sch. Dist.*</u>, 191 Wn.2d 343 (2018), for the argument that our courts distinguish an employer's duty to control an employee from "a broader direct duty arising from the defendant's relationship to the injured person." *ECF 25 at 10:6-7*. These cases are inapplicable here.

In <u>*Niece*</u>, a disabled resident of a care facility sued the facility for failing to supervise an employee who had abused her. <u>*Niece*</u>, *supra*. The WA Supreme Court held that as a residential facility for profoundly disabled individuals, Elmview's liability was not based on its general duty to train/supervise its employees, but rather the "special relationship" with its residents that imposed an enhanced "duty to take reasonable precautions to protect Niece from the foreseeable consequences of her impairments[.]" <u>*Id*</u>. at Wn.2d 46. The Court observed that the enhanced duty was "***much broader*** than [the employer's] duty to control its employees," and concluded that Niece's claim for negligent training/supervision was irrelevant in light of the "special relationship" between Niece and Elmview:



KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

> Niece's cause of action for negligent supervision thus collapses into her negligence claim based on Elmview's breach of its special relationship duty of care. ***We therefore find it unnecessary to determine whether Niece has presented a factually sufficient claim for negligent supervision***.

*Id*. at 52 (emphasis added).

*Anderson* involved a high school employee that served alcohol to students who were later killed while driving drunk. *Anderson*, *supra*. The *Anderson* court first observed that plaintiffs' negligent training/supervision claim was consistent with the law because the coach had clearly acted "***outside*** the scope of his employment" when providing alcohol to minors *Id*. at 363. However, the *Anderson* Court went on to explain that, as in *Niece*, the operative claim at issue was not negligent training/supervision, but rather "negligent protection" based on the "special relationship" between the school and its students. *Id*. at 367-68 ("School districts have 'an enhanced and solemn duty' of reasonable care to protect their students.," and must therefore "protect the students in their custody from foreseeable dangers.")(*quoting* *Christensen v. Royal Sch. Dist. No. 160*, 156 Wn.2d 62, 67 (2005)).

Here, Plaintiffs' reliance on *Niece* and *Anderson* is entirely misplaced. First, contrary to *Niece* and *Anderson*, the actions of the individual officers in this case are admittedly ***within*** the course and scope of their employment, and Plaintiffs' claim for negligent training/supervision is therefore "not only improper…it is also superfluous." *LaPlant v. Snohomish County*, 162 Wn.App. 476, 480-81 (2002) *see also RESTATEMENT (SECOND) OF TORTS § 317* (claims for negligent hiring/training/supervision are "applicable ***only*** when the [employee] is acting outside the scope of his employment")(emphasis in original).

Second, both *Niece* and *Anderson* proceeded on claims of "negligent protection" based on the enhanced duty imposed by the defendants' "special relationship" with the victim of the tort, and not on the alleged "negligent training/supervision" of an employee. Here, Plaintiffs do not – and cannot – allege the City of Lakewood had ***any*** relationship with Mr. Vetrov, let alone a "special relationship" that would impose an enhanced duty of care owed to him individually. There is no simply basis for Plaintiffs to claim "a direct duty arising from the defendant's relationship to the injured person" in this case.



KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

Plaintiffs also cite to *Earl v. Campbell*, 34 Wn.App 2d 632 (2025), for the proposition that "negligent training is a unique claim that is potentially not redundant even when the employee acted within the scope of employment." *ECF 26 at 10:14-15*. Plaintiffs' reliance on *Earl* is based entirely on a footnote describing a hypothetical posed by counsel during oral argument. *Id*. (*citing Earl*, 24 Wn.App. 2d at fn. 16.). However, not only did the *Earl* court expressly state the discussion "has no bearing on the claim at issue here," but Plaintiffs' interpretation of that discussion – that a claim for negligent training can apply even if the employee acted within the course and scope of employment – is contrary to the litany of cases cited in *Earl* itself. *See Id*. at fn. 15 (quoting *Anderson's* holding that "an action based on negligent ***training*** and supervision is applicable only when the [employee] is acting outside the scope of his employment."); *See also Id*. (rejecting a prior court's holding that "the test adopted in *Anderson* does not require that the employees' conduct occur outside the scope of employment."). There is no simply basis to argue that *Earl* somehow reversed decades of well-established law on the availability of a claim for negligent training/supervision against a government employer.

**2. Plaintiffs Ignore the Public Duty Doctrine Entirely**

In addition to alleging the City breached an unidentified "direct duty arising from the defendant's relationship to the injured person" under *Niece* and *Elmview*, Plaintiffs also allege the City breached a number of other duties related to the general training/supervision of police officers:

> Plaintiffs allege the City and its police department failed to implement and enforce mandatory pursuit prerequisites; failed to verify that officers had current emergency-vehicle-operator training and pursuit intervention certification; failed to train officers on the statutory standards effective weeks before the fatal pursuit; failed to maintain a system that prevented uncertified personnel from initiating or continuing pursuits; and failed to train and prepare officers to provide or facilitate first aid at a law-enforcement-controlled scene.



KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

*ECF 26 at 11:2-8*. The problem with these allegations is that each of the duties identified are clearly governmental duties to the public at large, and not to any individual citizen. As outlined above, our federal courts have repeatedly recognized that the training and supervision of police officers, as well as overall policy-making, are quintessential public duties, the breach of which are not reachable in tort. *See e.g.*, *Dowell v. City of Lynnwood, supra* (public duty doctrine bars claim against the city for negligent training/supervision); *Shope v. City of Lynnwood, supra* ("The duty of the City to hire, train, retain, and supervise its officers is owed to the public at large, not to plaintiff individually."); *Fuller v. Lee*, *supra* (public duty doctrine bars claim for breach of general responsibility to supervise police officers). And our own Washington courts have confirmed that such duties remain "public duties" even when imposed, as alleged here, via "legislative enactments for the public welfare." *Pierce v. Yakima Cnty.*, 161 Wn.App. 791, 798 (2011).

Plaintiff have failed to even ***allege*** the special relationship required to make a "negligent protection" claim under *Niece* and *Anderson* here, and the general duties they identify regarding the training/supervision of police officers are clearly public duties under Washington law. Plaintiffs' claim for negligent/training supervision against the City of Lakewood clearly fails as a matter of law.

## C. CLAIMS AGAINST CHIEF SMITH IN HIS "INDIVIDUAL CAPACITY"

Plaintiffs concede their claims against Chief Smith "in his ***official*** capacity" are redundant of their claims against the City of Lakewood and should be dismissed. *See ECF 26 at 6:3-7*. Regarding their claims against Chief Smith "in his ***individual*** capacity," Plaintiffs continue to misunderstand (1) the City's arguments on the issue, (2) the cases on which their response briefing relies, and (3) the claims they have made in their own complaint.

///



KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

1. **Plaintiffs Fail to Sufficiently Allege Chief Smith's Individual Participation for Liability under 42 USC §1983**

Regarding the federal claims against Chief Smith individually under 42 USC §1983, the majority of Plaintiffs' briefing simply argues that such claims are cognizable under the law. *See ECF 26 at 6:17-7:23*. The City agrees such claims are appropriate in certain factual circumstances. The problem, however, is that not only have Plaintiffs failed to sufficiently allege such claims directly against Chief Smith here, but the factual and legal realities of this case make such a claim impossible to maintain.

For example, Plaintiffs cite *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) for the basic proposition that "a supervisor may be liable under §1983" if there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *ECF 26 at 6:18-21*. In *Starr*, the Ninth Circuit began by addressing the increasing flurry of lawsuits alleging supervisory liability under §1983, often "with only a faint hope that the discovery process might lead to some plausible cause of action." *Starr*, 652 F.3d at 1213. The *Starr* court noted that allowing such "abusive practices… would permit a plaintiff with a largely groundless claim to simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the discovery process will reveal relevant evidence." *Id*. (internal quotations omitted).

The *Starr* court went on to discuss the level of specificity required for a supervisory claim under §1983, including an in-depth examination of *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). In *Iqbal*, the plaintiff claimed the supervisory defendants "knew of, condoned, and willfully and maliciously agreed to subject him to harsh conditions of confinement as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest. *Starr*, 652 F.3d at 1214 (*citing Iqbal*, *supra*, at 680.) The complaint further alleged one of the supervisory defendants "was the principal architect of this invidious policy, and was instrumental in adopting and executing it." *Id*. (*citing Iqbal*, *supra*, at 680-81.). The *Starr* court noted with approval the Supreme Court's holding in *Iqbal*



KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

that even such extensive allegations "amounted to nothing more than a formulaic recitation of the elements of the constitutional claim," and that "their conclusory nature disentitled them to the presumption of truth." Id.; *quoting* *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009); *see also* Id. at 679 (notice pleading under Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

The *Starr* court then turned to the factual allegations made in the case before it, noting that – in contrast to the conclusory allegations in *Iqbal* – "[i]t is somewhat tedious to recount the many allegations in the complaint detailing what Sheriff Baca knew or should have known, and what Sheriff Baca did or failed to do." *Id.* at 1209. The court went on to spend four single-spaced pages, totaling nearly 2,000 words, detailing the dozens of specific, detailed factual allegations made against the sheriff over the course of several years, including specific incidents, specific dates, specific individuals, and so on, concluding that such claims were clearly sufficient to allege supervisory liability under §1983. Id. at 1209-1213.

Here, outside of the caption and the listing of the parties, Chief Smith is only mentioned ***one single time*** in the entirety of Plaintiff's *Second Amended Complaint*.

> At all times relevant, Patrick D. Smith was the Chief of Police for LPD, acting within the course and scope of his employment and under color of state law. As Chief, he was responsible for the supervision, discipline, training, and policy enforcement of all commissioned officers within the department, including those directly involved in the pursuit that resulted in the death of Bohdan Vetrov.

*ECF 20 at 20:8-123* (¶4.123 under the heading "Factual Allegations). That single vague statement, which merely outlines his duties as the Chief of Police, is a far cry from the detailed, specific allegations found sufficient in *Starr*, and even falls well short of allegations found to be wholly insufficient in *Iqbal*.

Nor do Plaintiffs' specific causes of action allege ***anything*** against Chief Smith, let alone provide the detail required under *Iqbal* and *Starr*. For example, Plaintiffs' second cause of action – for "deprivation of familial relationships" under the 14th Amendment – identifies "(Lakewood)(Smith)(Craner)(Urckfitz)" as defendants in the heading. *ECF 26 at 31:14*.



KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

However, the actual text of that cause of action alleges that "[a]t all times relevant, ***Defendants Cole Craner, Urckfitz, and Mark Eakes*** were acting under color of law state law in their capacities as commissioned law enforcement officers for LPD." *Id. at 31:18-20* (emphasis added). It goes on to allege that ***Craner, Urckfitz, and Sgt. Eakes*** "[e]ach exercised governmental authority, through actions or omissions, in connection with the vehicular pursuit that resulted in the death of Mr. Vetrov," and concludes by alleging "[t]he conduct of Defendants ***Craner and Urckfitz*** warrant the imposition of punitive damages under 42 U.S.C. § 1983[.]" *Id. at 31:21-22, 32:7-8* (emphasis added). Chief Smith is not named a single time anywhere in the cause of action.

The same is true for Plaintiffs' second 14th Amendment cause of action, titled "Purpose to Harm."[1] *See Id. at 32:10 et seq*. It begins by alleging "Defendants ***Craner and Urckfitz*** were acting under color of state law and in the course and scope of their duties as commissioned officers[.]" *Id. at 32:21-23* (emphasis added). It goes on to allege "[t]he conduct of Defendants ***Craner*** and ***Urckfitz*** was deliberately indifferent and conscience-shocking," and concludes that "[t]he conduct of Defendants ***Craner*** and ***Urckfitz*** support [sic] the imposition of punitive damages[.]" *Id. at 33:17-22* (emphasis added). Once again, there is no allegation whatsoever against Chief Smith, and his name is entirely absent from the federal cause of action.

2. **There is no Factual Basis to Allege Individual Supervisory Liability Against Chief Smith**

Noris it surprising that Plaintiffs fail to allege the specific, long-term, personal involvement of Chief Smith required to impose §1983 supervisory liability under *Iqbal* and *Starr*. Chief Smith began employment with the City on March 1, 2023, less than four months

[1] It is unclear why Plaintiffs include "purpose to harm" as a separate cause of action from "deprivation of familial relationship." Under the applicable case law, "purpose to harm" is merely a required element for a 14th Amendment claim related to a police pursuit. *See e.g.*, County of Sacramento v. Lewis, 523 U.S. 833, 854 20 (1998).



KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

before the incident at issue in this litigation.[2] And RCW 10.116.060 – the pursuit statue Plaintiffs cite more than 30 times as the explicit basis for their claims – was enacted on May 3, 2023, just 57 days before the incident at issue here. *See WA Legislative. Report 2023 c235 s 2*; *see also ECF 26 at 16:15-20:2*.

Simply put, there is no basis for Plaintiffs to allege Chief Smith's knowledge or acquiescence in prior constitutional violations, his personal involvement in unconstitutional policy-making, or his repeated ratification of unlawful/unconstitutional acts, and their claim for individual supervisory liability against Chief Smith under §1983 fails as a matter of law.

3. **Plaintiffs Confuse Supervisory Claims Against Chief Smith With *Monell*-Based Claims Against the City**

Next, much of Plaintiffs' response briefing on Chief Smith's supervisory liability under §1983 includes allegations and citations relevant only to their *Monell* claims against the City. For example, they claim "the Chief ***or his designee*** possessed final policymaking authority," and that Chief Smith "occupied ***the position*** responsible for department-wide training[.]" *ECF 26 at 7:6, 8:49* (emphasis added). They allege "***ratification*** as part of a ***broader*** training, policy-enforcement, review, and acquiescence theory," and point to "***ministerial decisions***…or reasonable ***reliance on subordinates***" as part of the City's "***department-wide*** systems." *Id. at ECF 26 at 7:20-8:10*.[3] Each of these arguments make clear that Plaintiffs' claims are against the chief of police ***ex officio***, as a final policy-maker for the City under *Monell*. *See e.g.* *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996)(identifying the chief of police as the "person possessing final policy-making authority" for *Monell* liability in certain circumstances); *see, e.g.,* *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358 (1991); *Storey v. Chelan Cnty.*, No. cv-10-0162-LRSSU, 2011 WL1575506 (E.D. Wash. Apr. 26, 2011) (when a § 1983 claim is asserted against a municipal entity and a

---

[2] See www.thenewstribune.com/news/local/article272100202.html; *see also* *Genasys Inc. v. Vector Acoustics*, LLC, 638 F. Supp. 3d 1135, 1146 (S.D. Cal. 2022)(court may "take judicial notice of certain items without converting the motion to dismiss into one for summary judgment.").

[3] To be clear, these arguments are from Plaintiffs' response briefing (*ECF 26*), and do not actually appear in the *Second Amended Complaint.*



KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

municipal officer in his official capacity, federal district courts routinely dismiss official capacity claims as duplicative).

The cases Plaintiffs cite in support of their claims against Chief Smith individually further show their misunderstanding of the difference between individual supervisory liability and *Monell*-liability under §1983. For example, they cite *Christie v. Iopa*, 176 F.3d 1231 (9th Cir. 1999), arguing it "recognizes ratification as a basis for municipal liability when an authorized policymaker approves a subordinate's decision and its basis." *ECF 26 at 7:16-18*. However, *Christie* only addressed the ***County's*** potential liability under *Monell*, and did not involve individual claims against ***anyone***, let alone in their supervisory capacity.[4] The two specific issues addressed in *Christie* were (1) whether the County's deputy prosecutor had the "final policymaking authority" required by *Monell*, and (2) whether a supervisor's actions constituted "ratification" under *Monell* *Id*. at 1235, 1239-40. Plaintiffs' citation to *Christie* in support of their supervisory claims directly against Chief Smith is misplaced.

Plaintiffs' also cite to *Larez* in arguing that individual supervisory liability can be found in a single instance of "ratification" of misconduct. *ECF 26 at 7:13-15 (citing Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir, 1991)). The only mention of individual supervisory liability in *Larez* is a 2-paragraph discussion of whether the jury's verdict was plain error based on the evidence at trial. *Id*. at 646. More importantly, the *Larez* court's discussion of the supervisor's actions related to whether those actions were relevant to ***the City's liability*** under *Monell*, concluding they "shed light on the operation, custom, or policy of his department, or on his ratification or condonation of the injurious acts." *Id*. at 630.

Here, the City does not dispute that Plaintiffs have properly alleged *Monell* claims against the City based on Chief Smith's "final policymaking authority" and/or his alleged "ratification" of an employee's actions. For that reason, the City's motion does not seek dismissal of Plaintiffs' *Monell* claims. Rather, Defendants seek dismissal of the

[4] The plaintiff had sued two individual employees under §1983 for their direct participation, but those claims were dismissed *sua sponte* by the district court and never appealed.



KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

"supervisory" claim directly against Chief Smith, as they fail to even approach the detail and specificity required to maintain such a claim. *See e.g., Starr, Iqbal, supra.*

4. **Plaintiffs Fail to Sufficiently Allege Negligence Claims Against Chief Smith**

Finally, Plaintiffs also purport to bring common law negligence claims against Chief Smith individually. As outlined in Defendants' motion, Plaintiffs fail to allege any facts sufficient to make such a claim; they do not allege he was personally involved, that he knew about the incident until after it had occurred, or that he was even on duty that day. *See e.g., ECF 25 at 8:13-22*. As with Plaintiffs' §1983 claims, their negligence cause of actions lists "Smith" in the heading – along with "Lakewood" "Craner" and "Urckfitz" – but does not otherwise mention him at all in the subsequent three pages of legal and factual allegations. *See ECF 20 at 28:6-31:11*.

Nor does Plaintiffs' response briefing provide any additional analysis. They include a subheading titled "The individual negligence allegations are not based on title alone," but the half-page of briefing simply repeats the claims against the City of Lakewood, providing no cognizable allegation of negligence against Chief Smith personally. *ECF 26 at 8:1*. For example, Plaintiffs cite to "SAC ¶¶ 4.186-4.189" as the basis for their claims against Chief Smith (*ECF 26 at 8:6*), but each of those paragraphs explicitly identify "the City of Lakewood and the Lakewood Police Department" as the at-fault party. *See e.g. ECF 20 at 27:16-28:5*. Again, Chief Smith is not even mentioned.

Plaintiffs have provided no basis for any negligence claim against Chief Smith directly, and that claim should be dismissed as a matter of law.

## II. CONCLUSION

Based on the briefing provided, Plaintiffs have failed to adequately plead the following causes of action, and Defendants respectfully request that such claims be dismissed:

1. any claim against Sgt. Eakes individually;



KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

2. negligent training/supervision against the City of Lakewood;
3. any claim against Chief Smith "in his official capacity;"
4. supervisory claim against Chief Smith individually under 42 USC §1983; and
5. negligence against Chief Smith individually.

DATED: August 28, 2026

KEATING, BUCKLIN & McCORMACK, INC., P.S.

By: */s/ Jeremy W. Culumber*

Jeremy W. Culumber, WSBA #35423
Danielle Rogowski, WSBA #51548
Attorneys for Defendants

1201 Third Avenue, Suite 1580
Seattle, Washington 98101
Phone: (206) 623-8861
Fax: (206) 223-9423
Email: jculumber@kbmlawyers.com
drogowski@kbmlawyers.com

I certify that this memorandum contains 3,765 words, in compliance with the Local Civil Rules.



KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Attorneys for Plaintiffs**
D. Angus Lee, WSBA #36473
ANGUS LEE LAW FIRM, PLLC
9105A NE Hwy. 99, Ste. 200
Longview, WA 98665
Phone: 360.635.6464
Email: angus@angusleelaw.com

**Attorneys for Plaintiffs**
Mark Lindquist, WSBA #25076
MARK LINDQUIST LAW, PLLC
100 S. 9th Street
Tacoma, WA 98402
Phone: 206.333.0773
Email: mark@marklindquistlaw.com

DATED: August 28, 2026

*/s/ Jeremy W. Culumber*
Jeremy W. Culumber, WSBA #35423
Email: jculumber@kbmlawyers.com



KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423